# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

ALFRED JOHN HAFLICH,

                Plaintiff,

      vs.

OFFICER ROBERT MCLEOD, In his
official and individual capacities, and
THE CITY OF TROY POLICE
DEPARTMENT,

                Defendants.

CV 09-161-M-DWM-JCL

ORDER

_____

Plaintiff Alfred Haflich prosecutes this action under 42 U.S.C. § 1983 against Defendant Robert McLeod, a police officer with the City of Troy, Montana. Haflich claims McLeod used unreasonable and excessive force to effect his arrest in violation of the Fourth Amendment of the United States Constitution. Haflich also seeks to impose Section 1983 liability directly against the City of Troy under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

The City has moved in limine to preclude Haflich from presenting evidence, testimony, or statements during the course of trial relating to the following matters: (1) alleged prior acts of McLeod that do not pertain to the alleged use of

excessive force; (2) characterization of the use of an X 26 taser in "stun-drive" mode as an "intermediate" level of force; and (3) the purported ostracism of Haflich by the community of Troy emanating from his prosecution of this lawsuit.[1]

The Court turns to address each aspect of the City's motion.

## A.    McLeod's Prior Conduct

Haflich's excessive force claim emanates from the undisputed fact that McLeod tased Haflich once in the ribcage with an X 26 taser in "stun-drive" mode. And the undisputed fact that at the time of the tasing, Haflich was seatbelted in the rear of McLeod's patrol vehicle with his hands cuffed behind his back.  To sustain his *Monell* claim against the City, Haflich must prove that McLeod's alleged violation of his Fourth Amendment rights can be attributed to the enforcement of a City policy, practice, or decision of a final policymaker. *Monell*, 436 U.S. at 694.

Haflich intends to satisfy the custom or policy element essential to liability under *Monell* by showing that the City had a longstanding practice or custom of remaining deliberately indifferent to McLeod's use of excessive force against detainees.  *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir.

---

[1] The City also moved in limine with respect to evidence or argument regarding indemnity or insurance.  Haflich concedes this aspect of the City's motion is properly granted.

2010).  Haflich intends to present evidence that on two separate occasions predating Haflich's arrest, McLeod threatened to deploy a taser on detainees who presented neither a threat or risk of flight.

The City does not challenge the admissibility of evidence pertaining to the two instances where McLeod purportedly threatened to deploy a taser.  Rather, the City to seeks to preclude Haflich from presenting evidence or argument relating to other alleged acts of McLeod that did not involve the use of excessive force.

The other disputed acts fall into two categories.  The first relates to fellow officers' concerns about McLeod's emotional stability and general fitness as a police officer.  The second category relates to the following alleged incidents, which Haflich characterizes as "taser-misconduct":  (1) shining a taser laser sight through a window and onto a woman; (2) shining a taser laser sight on individuals in a public parking lot; and (3) "bragging" about having deployed a taser on more people than any other local law enforcement officer.

The City argues that evidence of these other alleged acts is not relevant to any issue presented for resolution in this case and is therefore inadmissable under Federal Rule of Evidence 402.  Alternatively, the City argues that even if evidence of these other alleged acts is relevant, the evidence should be excluded under Federal Rule of Evidence 403 because any probative value the evidence may have

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  Finally, the City argues evidence of these other alleged acts of McLeod constitutes impermissible character evidence under Federal Rule of Evidence 404.

With respect to the first category of evidence, Haflich presents no argument in opposition and effectively concedes the City's argument is well taken. Consequently, this aspect of the City's motion is granted.  Haflich is precluded from presenting evidence or statements relating to concerns of fellow officers about McLeod's emotional stability or general fitness as a police officer, and any intra-departmental strife allegedly caused by McLeod.

Turning to the taser-misconduct category of evidence, Haflich argues the evidence is admissible against the City because it constitutes direct evidence of the City's deliberate indifference to Haflich's excessive use of force in effecting seizures and against detainees. Haflich further argues evidence of taser-misconduct would be admissible against McLeod individually – explaining that "the evidence would be offered to show [McLeod's] motive, plan, or intent, i.e., his improper affinity for Taser misconduct in part motivated" McLeod's tasing of Haflich.  Dkt. 93, at 3.  Neither argument persuades the Court.

Haflich's *Monell* theory of liability against the City of Troy is grounded in

-4-

his contention that the City of Troy, through then mayor James Hammons,
engaged in a longstanding custom of deliberate indifference to McLeod's use of
excessive force.  The standard of "deliberate indifference" sufficient to impose
liability on a municipality for acts of omission is only met when the need to act "is
so obvious, and the inadequacy so likely to result in the violation of constitutional
rights, that the policymakers of the city can reasonably be said to have been
deliberately indifferent to the need." *Clouthier*, 591 F.3d at 1249 (quoting *City of
Canton v. Terrace*, 489 U.S. 378, 390 (1989).

As this Court recently explained in resolution of the City's motion for
summary judgment, the information known to Hammons regarding the incident of
McLeod shining a taser laser sight through the window of a building did not raise
any issue concerning the use of excessive force by McLeod in effecting a seizure
or against a detainee, and did not identify a plainly obvious need to take corrective
action to prevent McLeod from using excessive force in effecting arrests.  Dkt. 99,
at 11-12.  Additionally, the record reflects that Hammons did in fact reprimand
McLeod with respect to the incident.  Dkt. 99, at 12-13.  Consequently, the
incident is not relevant to the issue of whether or not the City, through Hammons,
remained deliberately indifferent to McLeod's excessive use of force to effect
seizures and against detainees.

The same is true with respect to evidence relating to McLeod's alleged shining of the taser on individuals in a public parking lot.  This alleged incident, as acknowledged by Haflich, was expressly identified in the reprimand of Haflich by the Chief of Police – a reprimand which was upheld by Hammons.  Dkt. 82-7.

Finally, the Court finds that evidence of McLeod's "bragging" about the use of a taser, standing alone, is not relevant to the issue of whether the City remained deliberately indifferent to McLeod's actual use of excessive force.  Even if the evidence were relevant, it would be properly excluded under Federal Rule of Evidence 403 because the probative value of the evidence – uncorroborated by evidence of McLeod's actual use of a taser in the context of a  specific seizure or detention – is substantially outweighed by the unfair prejudice the evidence would visit on the City.[2]

Haflich also argues evidence of the other acts of taser-misconduct is admissible against McLeod directly under Rule 404(b) because "his improper

---

[2] In analyzing an excessive use of force claim, a jury must determine whether an officer's actions are "'objectively reasonable' in light of the facts and circumstances confronting [the officers]."  *Graham v. O'Connor*, 490 U.S. 386, 396-97 (1989) (citations omitted).  The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

affinity for Taser misconduct in part motivated" McLeod's tasing of Haflich.[3]

Federal Rule of Evidence 404(b) does not allow the introduction of "character evidence" in the form of other "crimes, wrongs, or acts...to show action in conformity therewith." But, evidence of prior bad acts is admissible for other purposes including proof of intent, plan, motive, knowledge, and absence of mistake or accident. *Id.* As noted, Haflich's entire, cursory argument is that the incidents of "taser misconduct" is admissible to show McLeod's motive as "his improper affinity for taser misconduct in part motivated McLeod's" tasing of Haflich.

The City does not present a pointed argument addressing Haflich's assertion that the referenced taser misconduct may properly be offered to establish McLeod's motive in tasing Haflich. Rather, it retorts that the evidence is not relevant to any material issue, otherwise fails to satisfy the four-pronged test for admissibility of other acts evidence, *see United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998), and would properly be excluded under Rule 403.

---

[3] Haflich suggests, in passing, that the City is improperly raising a Rule 404(b) argument on behalf of McLeod. Haflich fails to cite, and the Court has not found, any authority suggesting that a co-defendant may not object to the improper introduction of character evidence against another co-defendant, where, as here, introduction of the evidence may prove prejudicial to the former co-defendant's position.

With respect to Haflich's Section 1983 claim of excessive force, the other acts evidence would not be relevant to the issue of liability.  The reasonableness of the use of force determination must be based upon whether the officer's actions are objectively reasonable, without regard to the officer's intent or motive.[4] *Graham*, 490 U.S. at 397.

Haflich does not present a specific argument that evidence of other taser-misconduct is relevant to his claim for punitive damages under Section 1983 or his state law claims for assault and battery.  Haflich merely states that "[t]he acts of Taser misconduct and bragging about such conduct are similar to actually violating someone's constitutional rights by using a taser against them while handcuffed, seat-belted, and locked in the back seat of a squad car."  Dkt. 93, at 3-4.  The Court disagrees that the other taser misconduct identified by Haflich is sufficiently similar to Haflich's claim of excessive force to warrant its admissibility under Rule 404(b).

This aspect of the City's motion is granted.

---

[4]  While subjective motivation is generally immaterial, *Graham* does note that "evidence that the officer harbored ill-will" might properly be considered by the factfinder "in assessing the credibility of an officer's account."  *Grahame*, 490 U.S. at 399 n. 12.  Haflich does not argue or even suggest that McLeod harbored ill-will toward him.  To the contrary, Haflich argues he had an affinity for tasering individuals.

**B. "X 26 Taser in Stun-Drive" as an "Intermediate Level of Force"**

The City seeks to preclude Haflich from characterizing – through testimony,

evidence, or statements – the use of a taser in drive-stun mode as an intermediate

level of force.  Apparently Haflich intends to present expert opinion testimony that

the use of an X 26 taser in drive-stun mode constitutes an intermediate level of

force.  The City contends that testimony to that effect would constitute an

impermissible legal conclusion.  Haflich counters by arguing that because tasers

"cause excruciating pain, but are not deadly force," allowing an opinion that the

level of force is "intermediate" will be helpful to the jury.

Before admitting expert testimony under Federal Rule of Evidence 702, the

Court must be satisfied that the expert testimony will assist the factfinder in

deciding the case.  Consequently, unnecessary expert testimony may be excluded.

*See, Salem v. U.S. Lines Company*, 370 U.S. 31, 35 (1962) ("expert testimony not

only is unnecessary but indeed may be properly excluded in the discretion of the

trial judge if all the primary facts can be accurately and intelligibly described to

the jury, and if they, as men of common understanding, are as capable of

comprehending the primary facts and of drawing correct conclusions from them")

(internal quotations omitted).

The ultimate issue the jury will be asked to determine is whether McLeod

used unreasonable force against Haflich.  The jury will need to concern itself only with the question of whether the force was reasonable or unreasonable.  In reaching its determination, the jury will be assisted by a video recording of the incident.  Thus, the jury, armed with the primary evidence, will be quite capable of comprehending the facts and drawing a correct conclusion from those facts as to whether or not the force used by McLeod was reasonable or unreasonable.  Expert testimony attempting to quantify the level of force would, under the circumstances of this case, be both unnecessary and unhelpful.  *See e.g. Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (holding that a jury is not assisted by expert testimony on what level of force is appropriate under the circumstances).[5],[6]

This aspect of the City's motion is properly granted.

## C.    Community Ostracism

---

[5] The Court's conclusion does not mean to say that Haflich is precluded from presenting expert scientific testimony relating to such things as the voltage delivered by the X 26 in stun-drive mode and the physiological effects of that voltage – testimony that may prove helpful.

[6] It is worth noting that the Ninth Circuit has held – in the context of a qualified immunity analysis – that "the X 26 and similar devices when used in dart-mode constitute an intermediate, significant level of force."  *Bryan v. MacPherson,* — F.3d —, 2010 WL 4925422 *16 (9th Cir. 2010).  The Ninth Circuit has also found, in contrast, that the quantum of force of the X 26 taser in stun-drive mode is less than intermediate.  *Brooks v. City of Seattle*, 594 F.3d 1018, 1027-28 (9th Cir. 2010) (rehearing en banc granted by 623 F.3d 911 (9th Cir. Sep. 30, 2010)).

Haflich claims he has suffered emotionally from being ostracized by the community of Troy for prosecuting this lawsuit. The City seeks to preclude Haflich from presenting argument at trial relating to this purported ostracism.

Haflich resists the motion with the terse argument that "[e]vidence that McLeod has sought to surreptitiously undermine Haflich's lawsuit and make him uncomfortable in the town in which he lives" is relevant and admissible to "McLeod's malicious intent" in tasing him and the City's policy of deliberate indifference to McLeod's use of excessive force. Dkt. 93, at 6.

Haflich fails to present a persuasive or compelling argument supported by pertinent authority. The community of Troy's reaction to Haflich's prosecution of this lawsuit is totally irrelevant to the issues presented for resolution in this lawsuit – it has no "tendency to make any fact that is consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. This aspect of the City's motion is properly granted.

IT IS SO ORDERED

DATED this 5th day of January, 2011

  /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge