IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

ALFRED JOHN HAFLICH,

                Plaintiff,

vs.

OFFICER ROBERT MCLEOD, In his official and individual capacities, and THE CITY OF TROY POLICE DEPARTMENT,

                Defendants.

CV 09-161-M-DWM-JCL

ORDER

_____

## I.  Introduction

Plaintiff Alfred Haflich prosecutes this action under 42 U.S.C. § 1983 against Defendant Robert McLeod, a police officer with the City of Troy, Montana.  Haflich claims McLeod used unreasonable and excessive force to effect his arrest in violation of the Fourth Amendment of the United States Constitution.  Haflich also seeks to impose Section 1983 liability against the City of Troy under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Finally, Haflich advances claims for assault and battery under Montana law.  All of Haflich's claims emanate from the undisputed fact that McLeod tased Haflich once in the ribcage with an X 26 taser in "stun-drive" mode.

1

The City has moved in limine to preclude Haflich's expert witness, Mitch Walters,[1] from presenting expert opinion testimony with respect to 18 specific matters as identified in the City's motion. All of the 18 matters are opinions or statements set forth in Walters' September 1, 2010 expert witness report. Dkt. 82-3.

## II. Discussion

The admissibility of expert opinion testimony is governed by Fed. R. Evid. 702. An expert may present opinion testimony with respect to "scientific, technical, or other specialized knowledge" if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702. To deem expert opinion testimony admissible under Rule 702 the district court must ensure that it is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Rulings on the admissibility of expert testimony under Rule 702 are within the sound discretion of the trial court. *General Electric Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

### A. Relevancy

The element of Rule 702 requiring that expert testimony must assist the trier of fact "goes primarily to relevance." *Daubert v. Merrell Dow Pharmaceuticals,*

---

[1] Walters was the Chief of Police for the City of Troy at the time of the events which give rise to Haflich's lawsuit.

*Inc.*, 509 U.S. 579, 591 (1993). The opinion must be sufficiently tied to the facts of the case to aid the trier of fact in resolving a disputed fact. *Id*. (citation omitted). The opinion must "fit" the facts of the case and serve a "helpful" purpose to the jury (*Daubert*, 509 U.S. at 591), and the there must exist "a link between the expert's testimony and the matter to be proved." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quotation and citation omitted). Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

For the reasons discussed below, the following opinions of Walters challenged in the City of Troy's motion are inadmissible as opinions that will not assist the trier of fact.

1. Walters' report states the opinion that "tasers [...] are an intermediate level of force[.]" The Court has addressed the admissibility of this opinion testimony in its Order entered January 5, 2011, and has concluded the testimony is inadmissible. Dkt. 100 at 9-10. The testimony is irrelevant to the objective standard the jury must apply in considering the reasonableness of the force McLeod employed during Haflich's arrest. *See Graham v. Conner*, 490 U.S. 386, 397 (1989). Walters' expert testimony which categorizes the relative level of force involved in the use of a taser will not be helpful to the trier of fact in

resolving the reasonableness of McLeod's conduct under the circumstances of this case.  Dkt. 100 at 10.

     2.  Walters' report states, "We are trained to know that tasers potentially deliver thousands of painful volts of electricity[.]"  Walters and McLeod's training as to the voltage a taser "potentially" could deliver is irrelevant to the issue of the objective reasonableness of the *actual* level of force employed by McLeod.  The taser's potential voltage does not inform the jury as to the actual voltage discharged by the taser which McLeod used in "stun-drive" mode against Haflich.  Vague information as to the taser's potential will not assist the trier of fact to understand the evidence, or to determine a fact in issue.

     3.  Walters' report expresses the opinion that McLeod's conduct in having Haflich's vehicle towed was "punitive."  The character or nature of McLeod's conduct in calling a tow truck to move Haflich's vehicle is irrelevant to any factual issue the jury must resolve in this case.  McLeod's conduct in that regard is irrelevant to the issues of whether McLeod's use of force against Haflich was objectively reasonable or excessive, whether McLeod committed an assault or battery against Haflich, or whether the City of Troy engaged in a custom or practice of deliberate indifference to the excessive use of force by its police officers in violation of the Fourth Amendment to the United States Constitution.

Walters' opinion about the propriety of having Haflich's vehicle towed will not assist the trier of fact in understanding the evidence or determining a fact in issue in this case.

    4. Walters' report expresses his "supervisory questions regarding McLeod's relationship with specific members of the tow truck operator's family[.]" This statement of Walters' is irrelevant to Haflich's legal claims of excessive use of force, assault and battery, and his *Monell* claim against the City of Troy.

    5. Walters' report expresses his opinion about the intentions of James Hammons about viewing the DVD recording of McLeod's arrest of Haflich, and taking action against McLeod. Walters' report states that when he provided Hammons with a copy of the DVD recording, "Hammons replied that he was not interested in viewing the DVD and that he had no intention to take action on the matter."[2] Walters' statement regarding Hammons' intentions is not necessary, and will not assist the jury in resolving any factual matter. The parties agree that on November 17, 2009, Hammons and other City officials met with McLeod to address Haflich's complaint against McLeod. An audio recording of that meeting was made, and the parties agree the recording reflects that Hammons stated he did not want to view the DVD, and that initially he did not want to take any corrective

---

[2] James Hammons was the Mayor of the City of Troy at the time of the events which give rise to this lawsuit.

action against McLeod in response to Haflich's complaint.

The audio recording of Hammons' statements speaks for itself.  Walters' opinion testimony as to what should be made of Hammons' decision declining to view the DVD, and his initial decision not to take action against McLeod will not assist the jury in understanding the statements the parties agree Hammons made as memorialized in the audio recording.  Thus, Walters' statements regarding Hammons' intentions are not admissible as expert opinions under Rule 702.

6.  Walters' report reiterates what Hammons told McLeod during the November 17, 2009 meeting.  With respect to Hammons' initial response to Haflich's complaint, Walters asserts "Hammons was recorded telling McLeod that he had covered for (McLeod) when 'they' came after him the first time, and he would cover for him again[.]"  Again, the audio recording of the meeting speaks for itself, and Walters' statement which merely repeats what Hammons allegedly said, as contained in the audio recording, will not assist the trier of fact in understanding Hammons' recorded statements, or in resolving a fact in dispute.

7.  Walters' report states that at the November 17, 2009 meeting with McLeod Don Banning "forced himself into the room" where the meeting was taking place .[3]  This statement by Walters will not assist the trier of fact in

---

[3]Don Banning was a City of Troy council member, and was the mayor-elect for the City of Troy at the time of the events that give rise to this lawsuit.

understanding any evidence in this case, or in resolving any fact in issue. The issue of whether Banning "forced himself" into the meeting is irrelevant to the issues of whether Mcleod used excessive force on Haflich, whether McLeod committed an assault or battery against Haflich, or whether the City of Troy engaged in a custom or practice of deliberate indifference to the excessive use of force employed by its police officers.

    8. Walters' report expresses an opinion as to the nature of the information McLeod was attempting to communicate on the radio immediately prior to tasing Haflich. The undisputed evidence in this case reflects that Haflich failed to abide by McLeod's directive to remain quiet while McLeod radioed dispatch. And that McLeod then tased Haflich. With respect to these facts, Walters opines as follows: "The radio communication McLeod was attempting to convey to dispatch was the patrol vehicle departure mileage and certainly not critical enough for McLeod to have escalated the incident."

    Walters' opinion that McLeod was not attempting to communicate "critical" information does not assist the trier of fact in understanding the evidence in this case, or in resolving any fact in issue in light of Haflich's legal claims advanced in this action. Thus, Walters' opinion on the matter is inadmissible. Walters may, however, present testimony as a fact witness with respect to the City of Troy's

police department policies or practices regarding the information a law enforcement officer is to communicate under the circumstances McLeod encountered.

9.  Walters' report states that Walters had provided recommendations to Hammons, but that his "recommendations had been frequently undermined by Mayor Hammons." This opinion will not assist the trier of fact in this case. Walters may testify as a fact witness with respect to the information he provided, and the recommendations he made to Hammons, and he may testify as to Hammons' response to that information and those recommendations. But, Walters may not express an expert opinion characterizing Hammons' response as undermining Walters.

**B.     Issues of Law and Legal Conclusions**

An expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). An expert may not, however, "give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation and quotation omitted). *See also United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). The resolution of "doubtful questions of law is the distinct and exclusive province of the trial judge."

*Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quotation omitted). An expert's opinion is improper to the extent it directs a jury as to the result it should reach in making a decision. *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002). Further, "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter*, 373 F.3d at 1016 (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)).

The City of Troy moves to exclude evidence of Walters' statements or opinions which it contends constitute legal conclusions, or opinions on issues of law. The Court agrees that the following opinions are inadmissible.

1. Walters' report contains an opinion stating, "Even a Felony DUI driver deserves the protections the rest of us enjoy." The Court will instruct the jury in this case as to the applicable law, and Haflich's rights under the United States Constitution and Montana law which McLeod and the City of Troy allegedly violated. These instructions fall within the exclusive province of the Court, and Walters will not be permitted to testify as to the rights or legal "protections" citizens enjoy.

2. Walters states in his report that, "I consider McLeod's actions to have been [... an] abuse of a prisoner, and nothing less than an assault." In light of

9

Haflich's claims under Montana law for assault and battery, Walters' characterization of McLeod's conduct as an "assault" is a legal conclusion on an ultimate issue of law about which the Court will instruct the jury. Walters' opinion improperly directs the jury as to the conclusion it should reach on Haflich's claim of assault.

3. Walters' report sets forth his opinion concluding that McLeod's use of force, and his conduct in tasing Haflich were "punitive." The Fourth Amendment to the United States Constitution prohibits law enforcement officers from using "excessive force in the course of making an arrest," and the issue of whether the force was excessive is properly analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Walters' expert opinion concluding McLeod's use of force was "punitive" is equivalent to an opinion that the force was excessive or unreasonable.

Generally, an expert witness may not express an opinion as to the reasonableness or excessiveness of a law enforcement officer's use of force. Expert opinion testimony concluding the officer's conduct was "not justified," "not warranted," and "totally improper" expresses legal conclusions and "conclusory condemnations" of the officer's conduct, and merely instructs the jury as to the result it should reach. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2nd Cir. 1992).

Furthermore, expert testimony concluding that an officer's use of force was "excessive" addresses a factual determination that is properly within the province of the jury and will not assist the jury in resolving that issue. *Robinson v. Delgado*, 2010 WL 1838866, *6-7 (N.D. Cal. 2010). Accordingly, Walters' opinion that McLeod's conduct was punitive is an improper legal conclusion, and it will not assist the jury.

    4. Walters opines that a chief of police in Troy, Montana — a "Third Class City" — has "no real authority to [...] discipline" subordinate police officers. Walters' opinion attempts to describe the legal authority that a chief of police possesses — a subject that is governed by Montana law. *See e.g.* Mont. Code Ann. § 7-32-4105(1)(c) (providing that a chief of police "must have charge and control of all police officers"). Thus, Walters' opinion is a legal conclusion as to an issue of law on which the Court would instruct the jury if necessary, and the opinion is inadmissible.

    5. Walters' expert report addresses the circumstances surrounding a three-member panel that was convened to review Haflich's Complaint against McLeod. Walters opines that "the 'independent' review committee [...] violated statute[.]" First, "[t]he proper interpretation of a statute is a question of law[]" for the Court to resolve. *United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001).

Second, a statement as to whether an individual or entity violated a specific statutory provision is an opinion on a legal conclusion which an expert witness is not permitted to give. *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008). Consequently, Walters may not express an opinion as to whether the panel committee's conduct violated a statute.

      6. Walters' report includes a statement asserting that, "Hammons was the author of McLeod's ongoing empowerment via his <u>deliberate indifference</u> to the incidents involving McLeod." Dkt. 82-3 at 6 of 14 (emphasis in original). To impose liability against the City of Troy under 42 U.S.C. § 1983 and *Monell*, Haflich must demonstrate that the City engaged in a custom or practice of deliberate indifference to the excessive use of force employed by its police officers. A municipal governmental entity, such as the City of Troy, can be held liable under § 1983 "for injuries it inflicts through deliberate indifference." *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010). Thus, "deliberate indifference" is an element of municipal liability under § 1983 which the trier of fact is required to find. Walters' opinion stating that Hammons' conduct constituted "deliberate indifference" is a legal conclusion, and improperly directs the jury as to a conclusion on an ultimate issue that is exclusively within the

province of the jury.

### C. Subjective Beliefs or Speculation

To be admissible under Fed. R. Evid. 702, an expert's opinion must be based on scientific, technical, or specialized knowledge. *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir. 1994). The Court must be satisfied that the expert arrived at particular "conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation." *Id*. See also *Millenkamp v. Davisco Foods International, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009).

The City of Troy requests that the Court exclude various opinions stated by Walters on the basis that the opinions are his subjective beliefs or are speculative. As to those opinions discussed below, the Court agrees.

1. Walters states in his expert report that, "It appears to me that McLeod's [police] report was structured and intentionally misleading in [an] effort to minimize the appearance of the use of force being excessive." McLeod's report states that Haflich "was kicking the inside of the [patrol] car." Walters, however, believes there is no evidence in the DVD recording of the arrest confirming that Haflich was kicking the inside of the car.

By their own express terms Walters' statements about whether Haflich was

kicking the inside of the car and, more importantly, whether McLeod intentionally prepared a misleading police report, are speculative. His statements are based only on what "appears" to him from the evidence, and do not take into consideration that there may exist other evidence that Haflich was in fact kicking the inside of the car. His speculative statements premised on mere appearances are not based on scientific or specialized knowledge, and are insufficient to establish that Haflich was not kicking or that McLeod intentionally prepared a misleading report. The statements are inadmissible speculation.

      2. Walters' report expresses his opinion with respect to McLeod's intent in opening the rear door of the patrol car. Walters states in his expert report as follows:

> In fact, there was no reason for McLeod to have opened Haflich's door in the first place, except that it appears McLeod did so because he was already considering tasering Haflich for his prior verbal statements and comments which McLeod felt were insulting to him.

Walters offers no facts or data in support of his belief, and he does not describe the basis and reasons for his belief. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii). Walters' statement of what "appears" to him is not founded upon scientific, technical, or specialized knowledge, or arrived at through scientific methods and procedures. Rather, the statement is Walters' inadmissible subjective belief as to what McLeod was considering doing when he opened Haflich's door.

3.  Walters' report includes a statement expressing his belief that Don Banning demonstrated a "willingness to do whatever he wanted to support McLeod." Again, Walters' report does not identify any facts or data in support of his belief as to Banning's "willingness," and he does not describe the basis and reasons for his belief. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii). Walters' opinion about Banning's state of mind or intentions is not based on specialized knowledge, or arrived at through scientific methods and procedures. The opinion is merely Walters' subjective belief as to what Banning was willing to do.

Based on the foregoing, IT IS ORDERED that the City of Troy's Motion in Limine Concerning Plaintiff's Liability Expert is GRANTED.

DATED this 10th day of January, 2011.

      /s/ Jeremiah C. Lynch
      Jeremiah C. Lynch
      United States Magistrate Judge